USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  11/24/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To: People of the State of California v.
General Motors L.L.C., 14cv7787*
----------------------------------------------------------------------------x

14-MD-2543 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

 The present case — brought by the People of the State of California, acting by and through Orange County District Attorney Tony Rackauckas ("Plaintiff"), against General Motors L.L.C. ("New GM") — is part of the multidistrict litigation ("MDL") proceedings relating to defects in the ignition switches and other features of certain General Motors vehicles and associated product recalls.  The question at this stage does not pertain to the merits, but to whether the case should remain in federal court as part of the MDL.  Plaintiff originally filed suit in California state court (specifically, Orange County Superior Court); thereafter, New GM removed the case to the United States District Court for the Central District of California, from which it was transferred to this Court as part of the MDL proceedings.  Now pending is Plaintiff's motion to remand the case back to Orange County Superior Court.

 For the reasons to follow, the motion is GRANTED.

## BACKGROUND

 As noted, this case is part of the ongoing MDL proceedings relating to defects in certain General Motors vehicles and associated product recalls, familiarity with which is assumed.  In parallel proceedings pending before the Honorable Robert E. Gerber, a United States Bankruptcy Judge in this District, New GM is seeking to enjoin many of the claims within the MDL.

1

Specifically, to the extent relevant here, New GM has moved to enforce a Sale Order and Injunction entered by Judge Gerber in 2009 (the "Sale Order"), through which New GM purchased the majority of the assets of Reorganized Debtor General Motors Corporation, now called Motors Liquidation Corporation ("Old GM"), "free and clear" of many of Old GM's liabilities.  (09-BR-50026 Docket Nos. 2968, 12620).  During the pendency of those proceedings, Judge Gerber has required parties seeking to litigate defects claims against New GM to either enter into a stipulation with New GM staying their actions pending his decision on the motions to enforce or to file a "No Stay Pleading" indicating why their actions should not be stayed.  (*See, e.g.*, 09-BR-50026 Docket No. 12697, at 5-6).

On June 27, 2014, the District Attorney of Orange County, Tony Rackauckas, acting on behalf of the People of the State of California, filed the action that is the subject of this motion in California's Orange County Superior Court.  (14-CV-7787 Docket No. 1, Ex. 3).  On July 1, 2014, Plaintiff filed its First Amended Complaint.  (Am. Compl. (14-CV-7787 Docket No. 1, Ex. 5)).  The Amended Complaint alleges that, by failing to disclose and by actively concealing several known defects in its vehicles, including the ignition switch defects, New GM "enticed vehicle purchasers to buy GM vehicles under false pretenses" (Am. Compl. ¶ 2), and thus violated California's Business & Professions Code, Sections 17200 *et. seq.* (California's Unfair Competition Law, or "UCL") and 17500 *et seq.* (California's False Advertising Law, or "FAL") (Am. Compl. ¶¶ 1, 253-274).  The Amended Complaint asserts that the case is a "law enforcement action which primarily seeks to protect the public safety and welfare, brought by a governmental unit in the exercise of and to enforce its police power" and that Plaintiff only seeks to hold New GM liable for its "***own*** acts and omissions ***after*** the July 10, 2009 effective date" of the Sale Order.  (Am. Compl. ¶¶ 1, 3 (emphasis in original)).

New GM filed a Notice of Removal on August 5, 2014, removing the case to the United States District Court for the Central District of California.  (*See* Def.'s Notice Removal Action Under 28 U.S.C. § 1441(a) (Bankruptcy Court & Subject Matter Jurisdiction) ("Notice of Removal") (14-CV-7787 Docket No. 1)).  New GM asserted (and continues to assert) that removal was proper for two reasons.  First, New GM contended that "Plaintiff's claims in this case, and any dispute concerning the [Sale Order], arise under the Bankruptcy Code or in a case under the Bankruptcy Code, and the Bankruptcy Court therefore has core jurisdiction over this action under 28 U.S.C. §§ 157(b) and 1334(b)."  (*Id.* ¶ 10).  Second, New GM asserted federal question jurisdiction under Title 28, United States Code, Section 1331.  (*Id.* ¶¶ 13-18).  On August 6, 2014, New GM filed a Notice of Tag-Along Action with the Judicial Panel of Multidistrict Litigation ("JPML"), seeking to have the case transferred to this Court and included as part of the MDL.  (JPML MD-2543 Docket No. 399).  On August 19, 2014, Plaintiff filed an opposition to the Notice of Tag-Along action (JPML MD-2543 Docket No. 413); on the same day, Plaintiff filed a "'*Limited*' No Stay Pleading" in the Bankruptcy Court, seeking permission to file a motion to remand the action to state court (09-BR-50026 Docket No. 12862).  Plaintiff proceeded to file such a motion on August 22, 2014 (C.D. Cal. 14-CV-1238 Docket No. 18), but the United States District Court for the Central District of California declined to rule on it pending the JPML's decision on transfer (C.D. Cal. 14-CV-0123 Docket No. 35).  Thereafter, Plaintiff withdrew its opposition to transfer (JPML MD-2543 Docket No. 470), and on September 25, 2014, the action was transferred here.  (14-CV-7787 Docket No. 38).  Plaintiff filed the motion to remand in this Court on October 9, 2014.  (14-MD-2543 Docket No. 335).

**DISCUSSION**

It is axiomatic that "federal courts are courts of limited jurisdiction and, as such, lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (internal quotation marks omitted). As a general matter, Congress has granted federal district courts original jurisdiction over cases "arising under" federal law,  28 U.S.C. § 1331, and certain cases between citizens of different States, *see* 28 U.S.C. § 1332.  *See generally In re Standard & Poor's Rating Agency Litig.*, No. 13-MD-2446 (JMF), — F. Supp. 2d —, 2014 WL 2481906, at *8 (S.D.N.Y. June 3, 2014). Additionally, district courts are vested with "original but not exclusive jurisdiction of all civil proceedings arising under title 11 [of the Bankruptcy Code], or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  If a case falls within any of those categories — that is, "if the case could have been originally filed in federal court," *Hernandez v. Conriv Realty Assocs.,* 116 F.3d 35, 38 (2d Cir. 1997) — it may be "removed by the defendant or defendants" to federal court.  *See* 28 U.S.C. §§ 1441(a), 1452(a).  Removal based on bankruptcy jurisdiction, however, is subject to an important limitation: It does not extend to "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power."  28 U.S.C. § 1452(a).

"Judicial scrutiny is especially important in the context of removal, where considerations of comity play an important role," *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 618 (S.D.N.Y. 2013) (internal quotation marks omitted), and "the importance of such scrutiny is at its zenith where, as here, the suit was brought by a State itself, as 'the claim of sovereign protection from removal' in such circumstances 'arises in its most powerful form,'" *Standard & Poor's*, 2014 WL 2481906, at *8 (quoting *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012)).  In fact, "'[i]n light of the congressional intent to restrict federal court

4

jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.'" *Purdue Pharma,* 704 F.3d at 213 (quoting *Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 274 (2d Cir.1994)) (alteration in original); *accord Veneruso,* 933 F.Supp.2d at 618. Such "strict construction of the right of removal" also "makes good sense," as "[a]n order denying a motion to remand a case to state court is ordinarily not appealable until after a final judgment or order is filed in the case." *Standard & Poor's*, 2014 WL 2481906, at * 9 (quoting 16 James Wm. Moore et al., Moore's Federal Practice § 107.05 (3d ed. 2012)) (alteration in original). "If the court of appeals determines that the case should have been remanded on the ground that there was no federal jurisdiction, the judgment on the merits must also be vacated because of the lack of jurisdiction. If the case was improperly remanded, at least the state court judgment will not be invalidated because of a lack of subject matter jurisdiction." *Id.*; *cf. New York v. Shinnecock Indian Nation,* 686 F.3d 133, 136-41 (2d Cir. 2012) (vacating a judgment, after nine years of litigation and trial, for lack of subject matter jurisdiction, where the district court had denied remand). The removing party — here, New GM — bears the burden of establishing that removal was proper. *See, e.g., Blockbuster, Inc. v. Galeno,* 472 F.3d 53, 57-58 (2d Cir. 2006).

## A.  The Police-Power Exception to Bankruptcy Jurisdiction

New GM contends first that, pursuant to Section 1452(a), removal was proper because the case falls within the bankruptcy jurisdiction created by Section 1334(b).[1]  (Def. General

---

[1]     Plaintiff disputes the existence of bankruptcy jurisdiction in the first instance, noting that — in light of the statutes of limitations for claims under the UCL and FAL — its claims are limited to New GM's conduct since 2010, one year *after* the 2009 Sale Order.  (Mem. Law Supp. Mot. To Remand Pl. People State Cal. (14-MD-2543 Docket No. 336) ("Pl.'s Mem.") 2).  Judge

Motors, LLC's Resp. Opp'n Pl.'s Mot To Remand (14-MD-2543 Docket No. 354) ("GM's Opp'n") 9-12).  As noted, however, removal under Section 1452(a) does not apply to "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power." 28 U.S.C. § 1452(a).  The question presented here is whether Plaintiff's case falls within this "police-power exception."

        In analyzing the police-power exception, courts typically apply the "pecuniary purpose" test, asking "whether the governmental action relates primarily to the government's pecuniary interest in the debtor's property . . . or to matters of safety and welfare."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 133 (2d Cir. 2007).[2]  In addition, courts often apply the "public policy" test, in which a court asks "whether the government seeks to effectuate public policy or to adjudicate private rights."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (internal quotation marks omitted).  Although the Second Circuit has never ruled on the validity of these tests, it has found them to be met when cases "relate primarily to matters of public health and welfare, and the money damages sought will not inure, strictly speaking, to the economic benefit of the states," but rather, are brought to further "significant area[s] of state policy."  *In re MBTE Prods. Liab. Litig.*, 488 F.3d at 133.[3]

_____

Gerber rejected a substantially similar attack on the Bankruptcy Court's jurisdiction on the ground that it "conflates the conclusion [the Bankrupty Court] might reach after analysis of matters before [it] — that certain claims ultimately might not be covered by the Sale Order — with [its] jurisdiction to decide whether or not they are."  *In re Motors Liquidation Co.*, 514 B.R. 377, 382-83 (Bankr. S.D.N.Y. 2014).  This Court, however, need not reach the question.

[2]        As the Second Circuit has noted, the automatic stay provision of the Bankruptcy Code, Title 11, United States Code, Section 362(b)(4), contains an analogous police-power exception. *See In re MTBE Prods. Liab. Litig.*, 488 F.3d at 132.  Accordingly, it is "proper to look to judicial interpretations of section 362 for guidance."  *Id.*

[3]        As both parties note (*see* GM's Opp'n 13 n.8; Pl.'s Mem. 10), some courts have applied a broader "pecuniary advantage" test, pursuant to which "the relevant inquiry is not whether the

Significantly, application of these tests (and, therefore, the police-power exception) has evolved over time.  In early cases, courts applying the pecuniary purpose and public policy tests looked primarily to the legislative history of the police-power exception — specifically, to comments by members of Congress that the exception was "intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety."  *In re Chateaugay Corp.*, 115 B.R. 28, 32 (S.D.N.Y. 1988) (quoting 124 Cong. Rec. 32,395 (1978) (Statement of Rep. Edwards)); 124 Cong. Rec. 33,995 (1978) (identical Statement of Sen. Deconcini)).  Relying on that legislative history, courts concluded that whether the police-power exception applied turned on the merits of the individual exercise of police power and whether the lawsuit was truly intended to deter ongoing harmful conduct rather than benefit a state's coffers.  *See, e.g.*, *id.* at 33 (finding that the police-power exception did not apply because "allowing the Government to pursue this action . . . would at best have a marginal effect

---

governmental unit seeks property of the debtor's estate, but rather whether the specific acts that the government wishes to carry out would create a pecuniary advantage for the government vis-à-vis other creditors."  *Solis v. SCA Rest. Corp.*, 463 B.R. 248, 252 (E.D.N.Y. 2011); *see also, e.g.*, *U.S. ex rel. Fullington v. Parkway Hosp., Inc.*, 351 B.R. 280, 286 (E.D.N.Y. 2006) (making a persuasive case for application of the pecuniary advantage test in lieu of the pecuniary purpose test in interpreting Section 362(b)(4)).  The Second Circuit, however, has discussed only the pecuniary purpose test, and has not even mentioned the pecuniary advantage test.  *See In re MBTE Prods. Liab. Litig.,* 488 F.3d at 133.  Additionally, although both parties mention the pecuniary advantage test and allude to the *other* party's mention of it, neither party actually advocates for its application here (despite Plaintiff's assertion to the contrary).  (*See* GM's Opp'n 13 n.8 ("Plaintiff points out that some Second Circuit courts outside the Southern District of New York have substituted the 'pecuniary advantage' test for the 'pecuniary purpose' (or interest) test"); Reply Mem. Law Supp. Mot. To Remand Pl. People State Cal. (14-MD-2543 Docket No. 361) ("Pl.'s Reply Mem.") 5 ("GM . . . argues that the pecuniary advantage test be used in determining the applicability of the police power exception.")).  Accordingly, the Court need not and does not address the applicability of the test in this case.  In any event, application of the test would not change the result because Plaintiff does not seek, nor could obtain, a "pecuniary advantage . . . vis-à-vis other creditors," *Solis*, 463 B.R. at 252, as it has agreed to stay its case pending Judge Gerber's ruling on the motions to enforce "for all . . . purposes" other than to file this instant motion.  (GM's Opp'n, Ex. F at 9).

on the deterrence of other entities"); *United States v. Seitles*, 106 B.R. 36, 39 (S.D.N.Y. 1989) (ruling that the police-power exception did not apply because the action involved "no threat to public health or safety" and the "civil action . . . does not serve to stop any continuing misconduct by the debtor."), *vacated pursuant to settlement*, 742 F. Supp. 1275 (S.D.N.Y. 1990).

In 1991, however, the Supreme Court rejected the argument that courts applying the police-power exception must first decide whether the proposed exercise of police or regulatory power is "legitimate," finding that such a "broad reading . . . would require bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity." *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 40 (1991). The Court concluded that "[s]uch a reading is problematic, both because it conflicts with the broad discretion Congress has expressly granted many administrative entities and because it is inconsistent with the limited authority Congress has vested in bankruptcy courts." *Id.* Since that decision, most courts analyzing the police-power exception have looked not to the subjective merits of a governmental entity's exercise of its police power in a given case, but rather "only to the purpose of the law that the governmental unit is attempting to enforce." *In re Enron Corp.*, 314 B.R. 524, 535 (S.D.N.Y. 2004). As the Fourth Circuit has put it, "[t]he inquiry is objective: we examine the purpose of the law that the state seeks to enforce rather than the state's intent in enforcing the law in a particular case." *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 865 (4th Cir. 2001). Such an inquiry, courts have reasoned, is not only more consistent with the Supreme Court's analysis in *MCorp*, but also avoids a subjective inquiry into a governmental entity's motive and intent that is inevitably "amorphous and speculative." *In re Commonwealth Cos., Inc.*, 913 F.2d 518, 523 n.6 (8th Cir. 1990) (internal quotation marks omitted).

In light of the foregoing — and mindful of its obligation to resolve all doubts against removability, *Purdue Pharma,* 704 F.3d at 213 — the Court concludes that this case falls within the police-power exception.  Viewed objectively, Plaintiff's UCL claims meet the "public purpose" test, as the Ninth Circuit has held that "[a] civil action brought by a governmental entity under [the UCL] is fundamentally a law enforcement action designed to protect the public and not to benefit private parties."  *City & Cnty. of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1125-26 (9th Cir. 2006) (internal quotation marks omitted). [4]  And just as this case is "fundamentally a law enforcement action designed to protect the public," *id.*, it does not "relate[] primarily to the protection of the government's pecuniary interest," *In re Universal Life Church, Inc.*, 128 F.3d 1294, 1297 (9th Cir. 1997).  There is no indication, for example, that UCL and FAL actions filed by governmental entities are brought primarily to confer financial benefit upon the state; to the contrary, the only form of monetary relief sought in this case — civil penalties — is a well-established "'means of securing obedience to statutes validly enacted under the police power.'"  *California ex rel. Brown v. Villalobos*, 453 B.R. 404, 413 (D. Nev. 2011) (quoting *Hale v. Morgan,* 22 Cal. 3d 388, 398 (1978)).  Such penalties are primarily "punitive in nature" and "are part of the enforcement mechanism" of consumer protection laws like the UCL and FAL.  *Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.*, 686 F. Supp. 2d 942, 948 (E.D. Mo. 2010); *cf. People v. the State of California v. Purdue Pharma L.P.*, No. 14-CV-1080

---

[4]     In arguing that the police-power exception does not apply, New GM relies heavily on *In Chateaugay Corp.*, *Seitles*, and *Enron*.  (GM's Opp'n 15-16).  As noted above, however, *Chateaugay* and *Seitles* reflect a subjective approach to the pecuniary purpose test that has since been reconsidered by many courts.  *See Parkway Hosp., Inc.*, 351 B.R. at 289 n.8.  And while the *Enron* Court noted the shift away from a subjective analysis, *see* 314 B.R. at 534-35, it "curiously" applied the subjective approach in finding, for case-specific reasons, that the police-power exception did not apply.  *Parkway Hosp., Inc.*, 351 B.R. at 289 n.8; *see Enron*, 314 B.R. at 538-39.  For these reasons, the Court declines to follow *Chateaugay Corp.*, *Seitles*, and *Enron*.

(JLS), 2014 WL 6065907, at *4 (C.D. Cal. Nov. 12, 2014) (noting that "civil penalties paid under the UCL and FAL . . . may be used only for the future enforcement of California's consumer protection laws," and citing *People v. Pacific Land Research Co.*, 20 Cal. 3d 10, 17, (1977), for the proposition that a state consumer protection action "seeking civil penalties and injunctive relief is 'fundamentally a law enforcement action designed to protect the public and not to benefit private parties'"). The monetary remedies available to Plaintiff through the UCL and FAL are thus means of reaching the ultimate goal of such actions — deterring fraud and unfair trade practices by California corporations — not the ultimate goal itself.[5]

In arguing otherwise, New GM observes that Plaintiff's role in this action is "indistinguishable" from the plaintiffs' role in *Andrews v. General Motors LLC*, No. 14-CV-5351 — a similar, but *private*, action pending in the MDL. "[I]t simply cannot be," New GM asserts, "that Congress intended for a local governmental authority — like the Orange County Plaintiff here — to be able to hire a plaintiffs' firm to do no more than refile a private civil suit in the name of the State and thereby deprive a defendant of its right to a federal forum." (GM's Opp'n 18). But that argument is little more than *ipse dixit*, and unpersuasive *ipse dixit* at that. By its terms, the police-power exception applies only to civil actions brought by a "governmental unit." 28 U.S.C. § 1452(a); *see also* 11 U.S.C. § 362(b)(4). Thus, the identity of the plaintiff is

---

[5]     Additionally, the legislative history — cited approvingly by the Second Circuit — plainly supports application of the police-power exception to consumer protection actions such as the one before this Court. *See City of N.Y. v. Exxon Corp.*, 932 F.2d 1020, 1024 (2d Cir. 1991) ("'[W]here a government unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.'" (quoting S. Rep. No. 989, 95th Cong. 2d Sess. at 52 (1978); H.R. Rep. No. 595, 95th Cong. 2d Sess. at 343 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5838, 6299) (emphasis omitted)).

not merely relevant — it can indeed mean the difference between whether the exception applies and whether it does not. *See, e.g.*, *Parkway Hosp.*, 351 B.R. at 290-91; *see also, e.g.*, *In re Reliance Grp. Holdings, Inc.*, 273 B.R. 374, 387-89 (E.D. Pa. 2002) (holding that a suit brought by the Pennsylvania insurance commissioner in her capacity as a liquidator was not an action by a "governmental unit" and thus did not fall within the police-power exception). In *Parkway Hospital*, for example, the Court held that the exception applied to *qui tam* claims under the False Claims Act where the Government had intervened. *See* 351 B.R. at 283-91. Applying the plain language of the statute, however, the Court held that the exception did *not* apply to the claims in which the Government did not intervene — even though it could "certainly be said" that they were brought by the *qui tam* relator "on behalf of a governmental unit or for a governmental unit." *Id.* at 290-91 (internal quotation marks omitted).

New GM also insists that Plaintiff's interpretation of the police-power exception allows for the exception to swallow the rule, by mandating that "*any* action brought by a governmental unit against a private business is automatically a police-power action." (GM's Opp'n 16). New GM's argument is overstated, however, as the police-power exception does not apply to "any" action by a governmental unit; it applies only to actions brought pursuant to laws with the primary purpose of enforcing a State's police power, as opposed to those intended to further a state's pecuniary interests. Additionally, New GM's alternative interpretation of the police-power exception suffers from its own problems. It would require courts to delve into the true motives of governmental units — at best, an "amorphous and speculative" task and, quite likely, an impossible task. *In re Commonwealth Cos., Inc.*, 913 F.2d at 523 n.6.[6] Finally, to the extent

---

[6] New GM's position in this case, for example, rest on highly subjective, not to mention speculative, arguments about Plaintiff's purpose in bringing this enforcement action, based on

that New GM has a valid complaint, it should be directed to Congress.  That is, this Court's task is not to decide whether the police-power exception is good policy.  It is to apply the statutory language as written.  For the reasons stated above, and in light of "developing precedent regarding the application of the [police-power] exception," the Court concludes that GM's interpretation is unpersuasive, and that the exception applies to this case.  *Parkway Hosp.*, 351 B.R. at 285.  Accordingly, Section 1452(a) did not provide a basis for removal.

## B.  Federal Question Jurisdiction

New GM argues, in the alternative, that there is federal jurisdiction over this matter pursuant to Section 1331, the federal-question statute.  As a general matter, a claim falls within the scope of Section 1331 "only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983).  At the same time, a "plaintiff cannot avoid removal by declining to plead 'necessary federal questions.'"  *Romano v. Kazacos*, 609 F.3d 512, 518-19 (2d Cir. 2010) (quoting *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998)); *see Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005) ("[A] plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law.").  Applying that principle, the Supreme Court has held that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  The doctrine — known as the "substantial federal

---

alleged contingency fee arrangements and settlements in other, unrelated actions.  (*See* GM's Opp'n 18-20).

question doctrine" — "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.; see generally Standard & Poor's*, 2014 WL 2481906, at *9.

Pursuant to the substantial federal-question doctrine, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013).  In *Grable*, the leading modern case on the substantial federal-question doctrine, the Supreme Court found federal jurisdiction proper in part because the federal issue in dispute — whether a plaintiff in a quiet title action had received proper notice from the Internal Revenue Service of the sale of his seized property — "appear[ed] to be the only legal or factual issue contested in the case."  545 U.S. at 315.  Further, and importantly, the Court found that "jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation" because "it is the rare state quiet title action that involves contested issues of federal law."  *Id.* at 319.  The Supreme Court has since emphasized that *Grable* confers federal jurisdiction in only a "special and small category" of cases, *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006), and that if the federal issue presented is not "a nearly pure issue of law," but rather "is fact-bound and situation-specific," federal jurisdiction may not be appropriate, *id.* at 700-01 (internal quotation marks omitted).

Contrary to New GM's assertions, "[t]his case cannot be squeezed into the slim category *Grable* exemplifies."  *Id.* at 701.  Plaintiff's claims arise solely under California state law.  And although the UCL claims are predicated, in part, on alleged violations of federal law — namely,

13

the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §§ 30101 *et seq.*, as amended by

the Transportation Recall, Enhancement, Accountability, and Documentation Act, 49 U.S.C. §§

30101-30170 (the "TREAD Act" and, together with the National Traffic and Motor Vehicle

Safety Act, the "Motor Vehicle Safety Act") — the alleged federal law violations are anything

but the "only" issues contested in the case.  Instead, as Plaintiff notes, the claims for violations of

the UCL and FAL are premised on various allegedly deceptive practices by New GM, "for which

violation of the TREAD Act is only one small part of multiple bases for liability."  (Pl.'s Reply

Mem. 10 (emphasis omitted)).  Second, the federal issues at play in this case are not "nearly

pure" issues of law.  Whether or not New GM complied with the TREAD Act (*see, e.g.*, Am.

Compl. ¶ 252) turns on, among other things, what New GM knew about the alleged defects in its

vehicles and when — a highly "fact-bound and situation-specific" inquiry.  *Empire*

*Healthchoice*, 547 U.S. at 701.  Finally, it is not the "rare" state consumer protection suit that

involves alleged violations of federal law; instead, "[s]tate courts frequently handle state-law

consumer protection suits that refer to or are predicated on standards set forth in federal statutes."

*Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012).  Allowing federal courts to

exercise jurisdiction over these types of suits, therefore, would have far more than "a

microscopic effect on the federal-state division of labor."  *Grable*, 545 U.S. at 315.  In short, this

case is "poles apart" from *Grable*.  *Empire Healthchoice*, 547 U.S. at 700.

## CONCLUSION

    For the foregoing reasons, the Court concludes that subject-matter jurisdiction is lacking

with respect to this case and that the case must be remanded to the Orange County Superior

Court from which it was removed.  The Court recognizes that that conclusion comes with a cost.

As this Court has observed, "[p]utting aside the natural temptation to find federal jurisdiction

14

every time a [high] dollar case with national implications arrives at the doorstep of a federal court, the federal courts undoubtedly have advantages over their state counterparts when it comes to managing a set of substantial cases filed in jurisdictions throughout the country." *Standard & Poor's*, 2014 WL 2481906, at *27 (internal quotation marks and brackets omitted).  The present MDL illustrates many of those advantages, as the Court has been able to manage and oversee the claims of well over a thousand plaintiffs in a manner that promotes efficiency and minimizes the risks of inconsistent rulings and unnecessary duplication of efforts.  Nevertheless, as the Court has made clear, it also has tools to promote coordination with related cases pending in state court, whether through communication with judges presiding over those cases or, where counsel in those cases is among the leadership in the MDL (as in this case), through counsel.  (*See* 14-MD-2543, Order No. 15 (Docket No. 315) (establishing procedures for coordinated discovery in this MDL and related state court proceedings).  "[I]n any event, as any student of the Constitution knows, efficiency is not the only interest served by this country's federalist system of state and federal courts." *Standard & Poor's*, 2014 WL 2481906, at *27.

In the final analysis, this Court is not free to disregard or evade "[t]he limits upon federal jurisdiction, whether imposed by the Constitution or by Congress." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  For the reasons stated above, the Court concludes that this case exceeds the limits of federal jurisdiction imposed by Congress.  Accordingly, Plaintiff's motion is GRANTED, and the case is remanded back to the Orange County Superior Court.

The Clerk of Court is directed to terminate 14-MD-2543 Docket No. 335 and 14-CV-7787 Docket No. 43, to remand 14-CV-7787 back to the Orange County Superior Court, and to then close 14-CV-7787.

SO ORDERED.

Date:   November 24, 2014
        New York, New York

_____
JESSE M. FURMAN
United States District Judge